(Reap. Dec. 10833)

CHADWICK-MILLER IMPORTERS, INC., ET AL. *v.* UNITED STATES

Entry No. 13472, etc.

(Decided October 14, 1964)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Norman C. Schwartz* of counsel) for the plaintiffs.

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

LAWRENCE, Judge: The 52 reappraisement appeals enumerated in the annexed schedule A and made a part hereof were consolidated for

trial. They relate to a variety of novelty items produced by many different manufacturer-sellers, imported from Japan.

The only question involved herein is whether certain inland transportation and shipping charges, incurred after the merchandise left the factory in Japan, were properly included as a part of statutory export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(b)).

When the case was called for trial in Boston, plaintiffs offered in evidence an affidavit of Tsunehiko Ikeda, managing director of Ikeda Bussan Kaisha, Ltd., of Tokyo, Japan, which was received in evidence as plaintiffs' exhibit 1. Plaintiffs also offered in evidence an affidavit of Tamotsu Mizuno, general manager of the Nanri Trading Co., Itd., Tokyo, Japan, which was received in evidence as plaintiffs' exhibit 2.

At subsequent proceedings held in New York plaintiffs introduced the testimony of Oscar Miller, treasurer for the past 12 years of Chadwick-Miller Importers, Inc., the real party in interest herein.

Miller testified in substance that in the performance of his duties he travels to Japan and is in charge of all purchases in Japan for his company; that his company has agents in Japan with whom he travels occasionally to the factories or the manufacturers visit him at the agents' showrooms. The manufacturers always quote ex-factory prices. When that is done, Miller said—

* * * I ask my agent to quote us as well the factory price; to quote us the f.o.b. price, so we can figure out our landed costs before we make any purchases. We must know what the ex-factory price and f.o.b price is.

Further, the witness stated—

* * * in addition to the ex-factory price, there is the agent's buying commission and there is the inland freight which has to be added to the ex-factory. Then, we have to add our duty and our incidental charges to figure our landed cost.

The substance of the two affidavits, exhibits 1 and 2, by Tsunehiko Ikeda and Tamotsu Mizuno, is that each is a buying agent for Chadwick-Miller and that they placed orders with manufacturers for the merchandise in controversy based upon ex-factory prices; that they would act as buying agents for any other importer; that such purchases would be on an ex-factory basis at ex-factory prices; and that manufacturers have been willing to sell to anyone for export to the United States on an ex-factory basis. Mizuno stated (exhibit 2) that—

* * * very few, if any, of the said manufacturers are equipped to handle all aspects of export operations, and accordingly sell to buying agents who assume responsibility for the merchandise at the factory.

Mizuno also stated that his company acted as buying agents for other United States importers who also bought on an ex-factory basis.

Although defendant, in its brief, notes that the plaintiffs dispute "only" certain charges which the appraiser added in finding the value of the merchandise f.o.b. the port of shipment, nevertheless, defendant seemingly misconceives the legal principles applicable to the facts of the case.

Defendant vigorously contends that plaintiffs have failed to establish that any of the involved items of merchandise were "sold or freely offered for sale * * * to all purchasers in usual wholesale quantities, in the ordinary course of trade, in accordance with the provisions of section 402(b) * * *" and reiterates this contention in substance in its proposed conclusions of law.

It is a well-recognized principle that an appellant may properly limit an appeal for reappraisement to a consideration of one or more of the items involved in the appraisement, in which event he may rely upon the presumption of correctness attaching to all other items entering into the appraisement *United States* v. *Freedman & Slater, Inc. (Household Utilities Mfg. Corp.)*, 25 CCPA 112, T.D. 49241; *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371. Note also *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71.

In view of the basic structure of this case, the court is of the opinion that the plaintiffs were not bound by the exacting evidentiary standards required in the cases cited by defendant which were decided upon different factual bases.

Defendant challenges the statement of the deponents in exhibits 1 and 2 that several manufacturers or sellers were willing to sell at the ex-factory prices and cites the *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 CCPA 19, C.A.D. 118, as an exact case in point, quoting therefrom the following:

* * * The statement made in the affidavit dated November 23, 1937, that the manufacturer is willing to sell to anyone at the same price charged to the Absorbo Beer Pad Co., Inc., is no proof of market value or price at the time of exportation of the merchandise, as required by the statute.

That was a case, however, where merchandise had been appraised on the basis of foreign value and the plaintiff was attempting to prove every single element of export value. There was no suggestion that the appeal was limited to one or two specific items as in the case at bar.

The evidence introduced by plaintiffs has not been refuted in any manner. It appears in the brief of plaintiffs that a buying commission, payable to the deponents in exhibits 1 and 2, which appears on each invoice, was allowed as a nondutiable charge by the appraiser.

The following statement also appears in the brief of plaintiffs:

With regard to a number of the individual manufacturer-sellers, a pro rata share of the inland charges was allowed. Plaintiffs' case is accordingly limited to those manufacturers assessed on an F.O.B. basis.

Plaintiffs have abandoned their appeals so far as they relate to merchandise with allowances made for said charges as nondutiable items.

The court makes the following findings of fact:

1. The merchandise covered by the consolidated appeals for reappraisement consists of various sundry and novelty items, exported from Japan during the years 1958 through 1961, and appraised under export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. Appraisement was made at undisputed ex-factory unit prices, as expressed on the invoices, plus, with regard to a portion of the merchandise, a pro rata share of inland and other transportation and storage charges incurred in Japan in the amounts as indicated on the invoices.

3. The involved merchandise was purchased by the importer from various manufacturers through buying agents at unit ex-factory prices. Said unit prices included none of the disputed charges.

4. On or about the dates of exportation of the involved merchandise, such or similar merchandise was freely sold or offered for sale to all purchasers in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the invoice unit ex-factory prices, net, packed.

As conclusions of law, the court holds:

1. Export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, *supra*, is the proper basis of appraisement herein.

2. Said export value is represented by the invoice unit prices, exclusive of any charges over and above said unit prices.

Judgment will issue accordingly.